DECISION AND JUDGMENT ENTRY
These consolidated appeals are before the court from judgments of the Sandusky County Court of Common Pleas, Juvenile Division, which terminated the parental rights of Nancy D. and Shawn D., the natural parents of Christopher D., Sean D. and Brittany D. From those judgments, appellant Nancy D. raises the following assignment of error:
 "THE JUVENILE COURT ERRED IN ITS RULING ON A MOTION REGARDING HEARSAY TESTIMONY EVIDENCE RULE 803(6) AND OHIO REVISED CODE SEC. 2317.40."
On September 8, 1998, complaints were filed in the Juvenile Division of the Sandusky County Court of Common Pleas alleging that Christopher D., Sean D. and Brittany D. were abused, neglected and dependent children, following a determination that the children had been victims of sexual abuse by a juvenile offender. After an initial hearing, the lower court ordered that legal custody of the children was to remain with Nancy D. under the protective supervision of appellee, the Sandusky County Department of Jobs and Family Services ("the Agency"). After a subsequent adjudicatory hearing, the parties agreed that the children were abused, neglected and dependent as alleged in the complaints. The court ordered that custody of the children was to remain with Nancy D. but that Shawn D. was to have no contact with the children. A case plan was prepared and signed by the parties. Under the plan, Nancy, Shawn, and each of the children were to participate in individual therapy, the family was to participate in family therapy, Shawn was to obtain an alcohol and drug assessment and submit to random screenings for drugs and alcohol, and Nancy and Shawn were to work with a parent aide to improve their parenting skills and to learn how to manage their money and maintain housing. From the beginning, however, Nancy and Shawn's compliance with the plan was erratic and at times non-existent.
In March 1999, temporary custody of the children was transferred to the Agency and the children were placed in foster care. The Agency's complaint seeking temporary custody was accompanied by the affidavit of Michelle Rosenberger, the caseworker assigned to this case. In her affidavit, Rosenberger stated, among other things, that Shawn was having contact with the children, that Nancy had failed to attend individual therapy and had failed to take the children to individual therapy, that Nancy was moving frequently and that she was not keeping the children in school. Rosenberger further stated that on January 22, 1999, Nancy had agreed to place the children with Shawn D.'s parents, and the children were so placed. Thereafter, however, Nancy began living with Shawn D., until his arrest on February 15, 1999, for failure to pay child support for another child. Nancy then moved again. Subsequently, Shawn D.'s parents indicated that they could no longer care for the children. Given Nancy's intent to continue to live with Shawn D. following his release from jail, and given that no other suitable relatives were available to care for the children, the Agency sought temporary custody of them.
Soon thereafter, a new case plan was approved with reunification as its goal. However, the service offered and Nancy and Shawn D.'s obligations under the plan remained the same. Over the next year, Nancy and Shawn's compliance with the case plan services was inconsistent. On May 28, 1999, the court issued orders to show cause as to why the parents should not be held in contempt for failure to comply with the case plan. In particular, the parents were not complying with individual and family therapy and were not meeting with the parent aide. Nancy was, however, consistent in her visits with the children. In August 1999, however, the Agency filed a motion to extend the temporary commitment which indicated that both Nancy and Shawn were attending therapy and that Shawn had received a drug and alcohol assessment. Thereafter, the judgment entry of October 15, 1999 documenting the annual dispositional review indicated that while Nancy was maintaining consistent visits, she had failed to maintain stable housing and had failed to comply with individual counseling. That entry further stated that Shawn was currently incarcerated and therefore was not maintaining stable housing or attending individual counseling. Subsequent motions and judgment entries revealed similar inconsistencies in Nancy and Shawn's compliance with case plan services.
On April 19, 2000, the Agency filed a motion for a modification of temporary custody to permanent custody. The motion alleged that the children had been in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two month period and that the children cannot and should not be placed with either parent within a reasonable time. Moreover, the motion alleged that following the placement of the children outside of the home, and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents had failed continuously and repeatedly to substantially remedy the conditions that caused the children to be placed outside the home.
The case proceeded to a dispositional review hearing on October 25, 2000, February 21, 2001 and March 7, 2001. At the beginning of the hearing, Stephanie Overmyer, the Agency's Investigation Supervisor and keeper of the Agency's records, testified regarding the Agency's running record on Nancy and Shawn D. and their children. Overmyer testified that the D. family was first investigated by the Agency's counterpart in Seneca County in 1991 and that since that time, the family has been referred to the Seneca County Department of Job and Family Services twelve times and to the Agency seven times. Overmyer continued to testify regarding the investigations conducted by Seneca County at which time appellant's counsel objected on the grounds of hearsay. The lower court overruled the hearsay objection but specifically stated:
 "However, I'm going to note that the Court is going to be very careful in the weight that it assigns this testimony, and is only going to use it in terms of background for the — to indicate the length of time that this family has been involved with the Child Protection System in Seneca and Sandusky County."
Overmyer then completed her testimony regarding the various investigations of the D. family that had been initiated since 1991. In addition to Overmyer, the following people testified at the dispositional hearing below: Michelle Rosenberger, the Agency caseworker assigned to the D. family; Tonya Burnell, the Agency caseworker assigned to the D. family while Rosenberger was on maternity leave from February to May 2000; Lisa Linder, a Sandusky County Child Support investigator; Carole Depew, the counselor supervisor at Firelands Hospital in Sandusky; Jason DeLancey, Shawn D.'s counselor; Linda Printy, Nancy D.'s counselor; Micki Bloom, Nancy D.'s therapist in Upper Sandusky, Ohio; Patricia Baine, the parent aide assigned to Nancy and Shawn D.; Elizabeth Koenreich, the mental health counselor for the children; Jennifer K., the children's foster mother; Thomas Aigler, the guardian ad litem assigned to the children; and Nancy D.
On March 19, 2001, the trial court issued findings of fact, conclusions of law and a judgment entry terminating Nancy and Shawn D.'s parental rights and granting permanent custody of the D. children to the Agency. Initially, the court found that the factors requiring the Agency's intervention were Nancy and Shawn's "lack of adequate child supervision and lack of child protection skills, lack of parenting skills, the need to relocate and maintain stable housing, unstable employment, physical and emotional abuse by Shawn [D.] and concerns about his substance abuse and criminal conduct." The court then found that the parents had been offered services to help correct the factors requiring the Agency's intervention including individual therapy for the parents and children, family therapy, parent aide services, education in budgeting, housing referrals, substance abuse assessment, treatment and random urine analysis. The court then made the following "SPECIFIC FINDINGS OF FACT REGARDING WHETHER THE CHILDREN CAN BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME OR SHOULD BE PLACED WITH EITHER PARENT":
 "10. That Nancy [D.] and Shawn [D.] have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside of the children's home;
 "11. That by not consistently attending individual counseling over the past 19 months, no progress has been made in commencing needed family counseling involving the children;
 "12. That since the filing of the complaints on September 8, 1998 Nancy and Shawn [D.] have relocated their residence on at least seven occasions;
 "13. That Shawn [D.] suffers from chronic chemical dependency that is so severe that it renders him unable to provide an adequate permanent home for the children within the next year;
 "14. That Shawn [D.] has a past history of domestic violence and has failed to demonstrate that he has successfully addressed this issue through counseling or through other means;
 "15. That Shawn [D.] has demonstrated a lack of commitment toward the children by failing to regularly visit and communicate with the children when able to do so;
 "16. That Shawn [D.] has failed to pay any child support on behalf of the children during the 19 months that they have been in the temporary custody of the SCDJFS;
 "17. That Nancy [D.] has had at least five different employers in the past year and is currently unemployed. Consequently, she has failed to make regular child support payments on behalf of the children[.]"
Next, the court made the following "SPECIFIC FINDINGS OF FACT REGARDING WHETHER PERMANENT COMMITMENT IS IN THE BEST INTEREST OF THE CHILD[REN]":
 "18. That during the 19 months (as of the commencement date of this hearing) that the children have been in the custody of the SCDJFS, they have been in the exclusive care of Chris and Jennifer [K.];
 "19. That the factors that required the children's removal on March 15, 1999 have not been corrected and still exist more than 19 months later;
 "20. That Shawn [D.] has visited the children on only one occasion since October 25, 2000;
 "21. That Nancy [D.] has been inconsistent with her visits since October 25, 2000;
 "22. That the children's behaviors were adversely impacted by Shawn and Nancy [D.'s] failure to regularly visit the children, especially since October 2000;
 "23. That the children's behaviors improved following the suspension of Nancy [D.'s] visits in January 2001;
 "24. That the [K.'s] have demonstrated success in parenting children, having adopted a daughter and two sons and having two children of their own;
 "25. That Christopher, Sean and Brittany each have a strong relationship with the [K.] children;
 "26. That Christopher, Sean and Brittany have a close relationship with Chris and Jennifer [K.];
 "27. That Christopher, Sean and Brittany know the aunts and uncles of the [K.] children and have a good relationship with them;
 "28. That Christopher, Sean and Brittany have a close relationship with the maternal grandparents of the [K.] children;
 "29. That Christopher, Sean and Brittany have a good relationship with the paternal grandparents of the [K.] children;
 "30. That the [Ks.] desire to adopt Christopher, Sean and Brittany in the event the SCDJFS is granted permanent custody of them;
 "31. That the [Ks.] have suitable housing available to assist them in caring for Christopher, Sean and Brittany;
 "32. That in the event the SCDJFS is granted permanent custody of the children, the Agency supports the adoption of the children by the [Ks.];
 "33. That Christopher, Sean and Brittany desire to be adopted by the [Ks.] in the event they cannot be returned to the custody of their parents;
 "34. That the Guardian Ad Litem supports the granting of permanent custody in the SCDJFS[.]"
Based on the above findings of fact, the lower court concluded that the children had been in the temporary custody of the Agency for nineteen or more months of a consecutive twenty-two month period; that the children cannot be placed with either one of their parents within a reasonable time; that placement of all of the children in the permanent custody of the Agency is in each of their best interests; and that the Agency had made reasonable efforts to eliminate the continued removal of the children from their home. Accordingly, the court granted the Agency permanent custody of the D. children. It is from that judgment that Nancy D. now appeals.
Before addressing the sole assignment of error raised by Nancy D., we find the following discussion essential to an understanding of the issues before the lower court and before this court.
The disposition of a child determined to be dependent, abused or neglected is controlled by R.C. 2151.353 and the court may enter any order of disposition provided for in R.C. 2151.353(A). However, before the court can grant permanent custody of a child to the agency, the court must determine: 1) pursuant to R.C. 2151.414(E) that the child cannot or should not be placed with one of his parents within a reasonable time; and 2) pursuant to R.C. 2151.414(D) that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4). R.C. 2151.414(E) provides that, in determining whether or not a child can or should be placed with a parent within a reasonable time, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time. Those factors include:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section of for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
"(16) Any other factor the court considers relevant."
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469. In determining the best interest of the children, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including but not limited to:
 "(1) The interaction and interrelationship of the child[ren] with the child[ren]'s parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child[ren];
 "(2) The wishes of the child[ren], as expressed directly by the child[ren] or through the child[ren]'s guardian ad litem, with due regard for the maturity of the child[ren];
 "(3) The custodial history of the child[ren], including whether the child[ren] [have] been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child[ren]'s need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
In her sole assignment of error, Nancy D. challenges the trial court's evidentiary ruling on the admissibility of Stephanie Overmyer's testimony regarding the Seneca County records of the D. family. Nancy D. contends that this testimony was inadmissible hearsay in that Stephanie Overmyer was not the custodian of records in Seneca County and therefore had no knowledge of how records in that county were kept. Nancy D. further contends that this evidence was of such a prejudicial nature that the trial court's decision must be reversed and the case remanded for a new hearing.
In overruling Nancy D.'s hearsay objection, as set forth above, the trial court stated that it would only use the evidence for purposes of background information and to indicate the length of time the D. family had been involved with the child protection system in Seneca and Sandusky Counties. Moreover, the findings of fact, conclusions of law and judgment entry filed by the lower court reveal that the court did not use any of Overmyer's testimony in reaching its factual determinations. Indeed, the trial court's decision never refers to any Seneca County proceedings or action taken against Nancy or Shawn D. in Seneca County. Accordingly, any error that the trial court may have committed in admitting the hearsay testimony was harmless and the sole assignment of error is not well-taken.
In addition to reviewing the assignment of error raised by appellant, we note that we have thoroughly reviewed the record in this case and conclude that the trial court's findings that the D. children cannot be placed with either parent within a reasonable time and that permanent custody was in the children's best interest were supported by clear and convincing evidence. Accordingly, the trial court did not abuse its discretion in awarding permanent custody of the D. children to the Agency.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgments of the Sandusky County Court of Common Pleas, Juvenile Division, are affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENTS AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Melvin L. Resnick, J., JUDGES CONCUR.